UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAIL A. CLARK,

     Plaintiff,

v.                                Case No: 8:20-cv-1261-WFJ-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Gail A. Clark, seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed an application for benefits on April 19, 2017. (Tr. 173–74.) The Commissioner denied Plaintiff's claim both initially and upon reconsideration. (Tr. 65–98, 101, 110.) Plaintiff then requested an administrative hearing. (Tr. 115–16.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 37–64.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits. (Tr. 20–31.) Subsequently, Plaintiff requested review from the Appeals Council, which the

Appeals Council denied.  (Tr. 1–6.)  Plaintiff then timely filed a Complaint with this Court.  (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. § 405(g).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1963, claimed disability beginning on June 24, 2015.  (Tr. 173–74, 187.)  Plaintiff has a General Equivalency Diploma (GED).  (Tr. 42, 191.)  Plaintiff's past relevant work experience includes work as an insurance claims adjuster and a claims supervisor.  (Tr. 30, 54, 191.)  Plaintiff alleged disability due to diabetes, retinopathy, osteoporosis, high blood pressure, gastrointestinal disorder, and fractured bones in feet.  (Tr. 190.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since June 24, 2015, the alleged onset date.  (Tr. 23.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: diabetic neuropathy, non-proliferative diabetic retinopathy, osteoporosis, status-post right foot fracture, nephropathy, possible gastroparesis, and a vitamin D deficiency, as well as non-severe impairments of diabetes, hypertension, hypercholesterolemia, depression, and anxiety.  (Tr. 23–25.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 25.)  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work, but with the following limitations:

> [F]requent bilateral push/pull; frequent foot control operation with the left lower extremity and occasional foot control operation with the right lower extremity; only occasional climbing ramps and stairs; never climb ladders, ropes, or scaffolds; only occasionally balance, stoop, kneel, crouch and crawl; occasional overhead reaching with the left upper extremity; frequent reach in all other directions, bilaterally; frequent handling, fingering, and feeling bilaterally; environmentally, avoid concentrated exposure to extreme temperatures, excessive vibrations, and irritants such as fumes, odors, dusts, gases and poorly ventilated areas; should avoid all exposures to hazardous machinery and unprotected heights; avoid concentrated exposure to jobs working in direct sunlight; must have a sit/stand option allowing this person to alternate briefly for two to three minutes between sitting and standing every 30 to 60 minutes while still attaining the sitting and standing required of the sedentary exertional limit (up to six hours of sitting, and two hours of standing/walking in an eight hour work day).

(Tr. 25–26.)

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 26.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a claims supervisor, both as she actually performed it and as others generally perform it in the national economy.  (Tr. 30.)  Accordingly, based on Plaintiff's age,

education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 31.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a)(4).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) whether the claimant

can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d

at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) whether the ALJ failed to address Plaintiff's request to reopen the prior application in the decision; (2) whether the ALJ failed to provide Plaintiff a full and fair hearing by limiting the questioning of Plaintiff by the representative to 10-15 minutes; (3) whether the ALJ failed to account for Plaintiff's absenteeism in formulating the RFC; (4) whether the ALJ erred in holding that Plaintiff can return to her past relevant work in light of her need to take breaks; (5) whether the ALJ failed to account for Plaintiff's gastroparesis symptoms in formulating the RFC; (6) whether the ALJ erred in failing to find that Plaintiff's anxiety is severe; (7) whether the ALJ erred in holding that Plaintiff could perform her past relevant work as generally and actually performed despite her limitations; (8) whether the ALJ erred as a matter of law when he excluded evidence under the five-day rule; and (9) whether the ALJ deliberately formulated his RFC in a way to circumvent the Grid Rules of Medical-Vocational Guidelines.  For the reasons that follow, none of these contentions warrant reversal.

### A. Request to Reopen

Plaintiff first argues that the ALJ erred by failing to address her request to reopen her prior Title II application in his decision.  (Dkt. 26 at 13–14.)  Plaintiff asserts that on September 15, 2017 and again on the date of the hearing, Plaintiff requested the ALJ reopen her prior Social Security disability application and consider the period from her alleged onset date, June 24, 2015, through the date of the prior denial, August 26, 2016.[1]  (*Id.* at 14.)  Notwithstanding, Plaintiff contends that the ALJ failed to address her requests to reopen which she alleges "constitutes a reversible error" under the Hearings, Appeals, and Litigation Law Manual for the Social Security Administration ("HALLEX"), specifically HALLEX I-2-9-85(A)(2).  (*Id.* at 13.) Specifically, Plaintiff contends that "without the prior file, it is unknown if the prior final and binding determination addressed the claimant's inability to perform her past relevant work, or identified the past relevant work as different from what the ALJ said it was." (*Id.* at 14.)  In response, the Commissioner contends that although no explicit finding was made, the ALJ "effectively reopened the prior application and, based on his explicit findings and discussion of the evidence, clearly adjudicated the period from June 24, 2015 through July 3, 2019." (Dkt. 31 at 3 n.5.)

HALLEX is the policy manual written by the Social Security Administration ("SSA") that conveys "guiding principles, procedural guidance and information to

---

[1] Plaintiff's previous application for Social Security benefits was denied on August 26, 2016.  (Tr. 83.) She did not appeal that denial.  (Tr. 42.)  Notwithstanding, Plaintiff included June 24, 2015 as her alleged onset date in the instant application.  (Tr. 83.)

hearing level and Appeals Council staff." *Jasent v. Berryhill*, No. 8:17–cv–2925–T–30AEP, 2019 WL 298430, at *5 n.3 (M.D. Fla. Jan. 3, 2019) (citing HALLEX I-1-001).  As noted above, Plaintiff relies on HALLEX I-2-9-85(A)(2) as the basis for her first contention.  That section provides, in pertinent part:

> If a claimant explicitly requests reopening of a determination or decision on a prior application, the ALJ will include in the decision a finding on the reopening and revision issue, with supporting rationale.  Additionally, if the ALJ informed the claimant in the notice of hearing or on the record during the hearing that he or she would consider reopening and revision of a prior determination or decision, the ALJ will address the reopening and revision issue in his or her decision on the current application, regardless of the outcome of the decision.

HALLEX I-2-9-85(A)(2), 2015 WL 4934223, at *1.  Notwithstanding these directives, the Eleventh Circuit has indicated in several unpublished decisions that HALLEX does not create judicially enforceable rights, particularly where a plaintiff fails to establish prejudice.  *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016) ("This Court has not decided whether HALLEX carries the force of law . . . . Even assuming (without deciding) that HALLEX carries the force of law and the agency failed to comply with it, [plaintiff] has not shown that she was prejudiced by this failure."); *Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x. 889, 892 (11th Cir. 2011) ("HALLEX is an agency handbook for the SSA not mentioned in § 405(g), so it cannot serve as the basis to remand [plaintiff's] case" especially in the absence of prejudice) (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. Unit A Sept. 1981)); *George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009) ("[E]ven if we assume that . .

- 8 -

. HALLEX carries the force of law—a very big assumption—the ALJ did not violate it . . . .”).  Other circuit and district courts have had similar holdings.  *See Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001); *Warren v. Astrue*, 830 F. Supp. 2d 1369, 1372 (S.D. Fla. Dec. 12, 2011); *Tarver v. Astrue*, No. CA 10–0247–C, 2011 WL 206217, at *3 (S.D. Ala. Jan. 21, 2011).  Prejudice “at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision.”  *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (citation omitted).

Here, even if the ALJ failed to comply with HALLEX I-2-9-85(A)(2), Plaintiff fails to demonstrate that she was prejudiced.  *See Clance v. Comm’r of Social Sec.*, No. 8:20–cv-557–T–SPF, 2021 WL 4129556, at *5 (M.D. Fla. Sep. 10, 2021) (noting that “violations of HALLEX cannot serve as grounds for remand in and of themselves, however.  The issue is whether these violations prejudiced Plaintiff such that the Commissioner violated her due process rights.”).  Indeed, Plaintiff’s sole contention, that “without the prior file, it is unknown if the prior final and binding determination addressed the claimant’s inability to perform her past relevant work, or identified the past relevant work as different from what the ALJ said it was,” fails to demonstrate that prejudice exists.  Moreover, the record reflects that despite failing to explicitly discuss reopening the prior application, the ALJ used June 24, 2015 as Plaintiff’s alleged onset date.  (Tr. 20–21, 23.)  Accordingly, the undersigned recommends that

Plaintiff's first contention does not warrant remand as Plaintiff failed to demonstrate prejudice. *See Marks v. Berryhill*, No. 8:16–cv–2865–T–AAS, 2017 WL 6568182, at *3 (M.D. Fla. Oct. 11, 2017) (holding that "even if the ALJ failed to comply with the HALLEX, Plaintiff fails to establish that the alleged failure prejudiced his claims").

## B. Full and Fair Hearing

Plaintiff next contends that the ALJ erred when he "failed to provide the Plaintiff a full and fair hearing by limiting the questioning of the Plaintiff by the representative to 10-15 minutes." (Dkt. 26 at 15.) Specifically, Plaintiff asserts that the ALJ "explicitly and arbitrarily restrained the Plaintiff representative's time for questioning" and reduced "the Plaintiff's freedom for answering." (*Id.* at 15–16.) As a result, Plaintiff asserts that she was denied "her due process right to a full and fair examination" in light of "[t]his 'rushed through approach' [which] deprived the Plaintiff from explaining herself in more detail than she did at the hearing and the representative from uncovering evidence that could have changed the outcome of the Plaintiff's case." (*Id.* at 15.)

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). After all, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

Here, the hearing transcript reflects that the ALJ conducted a full and fair hearing.  Contrary to Plaintiff's contentions, at no point did the ALJ limit the questioning of Plaintiff by her representative to 10-15 minutes.  Rather, the ALJ informed Plaintiff that her attorney would "spend 10/15 minutes asking [her] what he feels is important."  (Tr. 42.)  The transcript further reflects that Plaintiff's representative asked Plaintiff a series of questions, without interruption by the ALJ, and then informed the ALJ, "[n]othing further, Your Honor." (Tr. 42–46.) Moreover, as the hearing closed the ALJ asked Plaintiff's representative, "[a]nything further, Mr. Polhemus?" to which he responded "[n]o, Your Honor."  (Tr. 62.)  The ALJ then advised Plaintiff's counsel that "[i]f there's nothing further we're off the record" and Plaintiff's counsel thanked the ALJ.  (Tr. 63.)  Upon consideration, the undersigned finds that the ALJ did not unfairly limit the hearing time or questioning and recommends that Plaintiff's second contention does not warrant remand.  *See also Fallon v. Comm'r of Social Sec.*, No. 8:14–cv–315–T–30MAP, 2015 WL 5008674, at *4 (M.D. Fla. Aug. 7, 2015) (rejecting plaintiff's contention that he was denied a full and fair hearing despite the ALJ directing plaintiff's counsel to "finish up here in a couple minutes").

### C. Plaintiff's Absenteeism

Plaintiff next contends that the ALJ erred in failing "to account for [ ] Plaintiff's absenteeism in formulating the RFC."  (Dkt. 26 at 16.)  Specifically, Plaintiff asserts that the ALJ committed "reversible error" and should have found that she would

require at least two absences per month for her doctor's visits, which would preclude all full-time employment according to the VE.  (*Id.* at 17.)

The RFC is defined as the most a claimant "can still do despite [her] limitations."  20 C.F.R. §§ 404.1545(a)(1).  To determine a claimant's RFC, the ALJ makes an assessment based on all of the relevant evidence of record as to what the claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms such as pain.  20 C.F.R. §§ 404.1545(a)(1), (3).  In rendering this assessment, the ALJ considers evidence such as the claimant's medical history; medical signs and findings; medical source statements; effects of treatment, such as the frequency of treatment, duration, and disruption to routine; reports of daily activities; evidence from attempts to work; recorded observations; the effects of symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions.  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. 1996); *see also* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3).

Additionally, the RFC assessment ordinarily is based on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *1.  Nevertheless, "whether the number of medical appointments affects her ability to work is not an

appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (citing SSR 96-8p).  Therefore, "the number of medical appointments a plaintiff attends is not a functional limitation caused by her impairments that would affect her physical or mental capabilities." *Battle v. Comm'r of Social Sec.*, No. 2:20–cv–96–NPM, 2021 WL 1207757, at \*10 (M.D. Fla. Mar. 31, 2021) (citing *Cherkaoui*, 678 F. App'x at 904).

Here, to the extent Plaintiff contends the ALJ's RFC determination is unsupported because it did not include a limitation for absenteeism, the contention is without merit.  First, the record does not support Plaintiff's contention that the evidence "should have prompted the ALJ to add at least two absences in the RFC." (Dkt. 26 at 17.)  Rather, and as Plaintiff asserts, over the course of eight months she had only five appointments—which is significantly less than the two absences per month that she contends should have been added to the RFC.  (*See id.* at 17; Tr. 489, 499, 504, 529, 550.)  Second, as discussed above, absenteeism from work is not a medically determinable impairment, nor a functional limitation or a restriction that results from the impairment.  *See Cherkaoui*, 678 F. App'x at 904 (rejecting the argument that the number of medical appointments rendered the claimant disabled because medical appointments are not a functional limitation).  Last, the record reflects that the ALJ considered Plaintiff's claim of absenteeism as shown by the ALJ's

question to the VE regarding how many days of missed work would be tolerated over a monthly basis for several months.  (Tr. 58.)  After consideration, the ALJ found Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence and other evidence of record, and moreover, concluded that Plaintiff retained the RFC to perform her past relevant work.  (Tr. 26, 28).  Indeed, there is nothing in the ALJ's decision to indicate that he was unaware that the RFC assessment measures Plaintiff's capacity for work activity "on a regular and continuing basis."  20 C.F.R. §§ 404.1545(b),(c); SSR 96–8p (stating, in its first sentence, that "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").  Therefore, the undersigned recommends that the ALJ did not err as his decision is supported by substantial evidence.  *See Whitlow v. Astrue*, No. 3:08–cv–159–SRW, 2010 WL 1995608, at *6 (M.D. Ala. May 17, 2010) (stating that the ALJ was not required to make a separate finding on absenteeism issue where he was aware of relevant VE testimony, discounted plaintiff's subjective complaints, and found that she was capable of returning to her past work).

### D. VE Testimony is Supported by Substantial Evidence

Plaintiff next contends that the ALJ erred in finding Plaintiff able to perform her past relevant work based on the VE's testimony, despite her need for "additional recess for two to three minutes for walking around and stretching every thirty

minutes." (Dkt. 26 at 17.)  Specifically, Plaintiff contends that the VE's testimony that Plaintiff could return to her sedentary work and would be required to take a brief recess every thirty minutes for two to three minutes for alternating between sitting and standing is not based on substantial evidence and "conflicts with SSR 83-12 which the ALJ should have been aware of." (*Id.* at 18.)  According to Plaintiff, "[t]he ALJ thus erroneously held that the Plaintiff can perform her past relevant work with this new restriction." (*Id.*)  In response, the Commissioner contends that even if "there was no evidence about whether her previous employment would allow her to take breaks every thirty minutes, as provided for in the sit-stand portion of the RFC finding," she has failed to establish harm since the ALJ's finding that Plaintiff could perform her past relevant work as generally performed "was supported by the VE's testimony and, thus, substantial evidence." (Dkt. 31 at 12 & n.8.)

The ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  However, in order for a court to find that a hearing violated a claimant's rights and thus requiring remand, a claimant must demonstrate prejudice. *Kelley*, 761 F.2d at 1540.  "This at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.*  As the Eleventh Circuit Court of Appeals instructs, "[t]he burden is on the claimant to show that she can no longer perform her past relevant work as she actually performed it, or as it is performed in the general economy." *Waldrop v. Comm'r of Social Sec.*, 379 F.

App'x 948, 953 (11th Cir. 2010) (citing *Jackson v. Bowen*, 801 F.2d 1291, 1293–94 (11th Cir. 1986)).

Here, the undersigned finds the ALJ's determination that Plaintiff could still perform her past relevant work as a claims supervisor, as it is performed in the general economy, is supported by substantial evidence and complies with SSR 83-12. Although Plaintiff contends that "the record is silent whether the Plaintiff was allowed to take unscheduled brief recesses for two to three minutes every thirty minutes at her previous employment" (Dkt. 26 at 18), it is her "burden to demonstrate not only that she can no longer perform her past relevant work as she actually performed it, but also that she can no longer perform this work as it is performed in the general economy." *Waldrop*, 379 F. App'x at 953.

Indeed, upon review of the record, the undersigned finds that the ALJ appropriately considered evidence of Plaintiff's past work as a claims supervisor, as the job is performed in the general economy.  Specifically, the VE provided her expert testimony that a claims supervisor position involves sedentary work that could be performed by an individual with Plaintiff's limitations.  (Tr. 54–62.)  During the hearing, the VE referred to the Dictionary of Occupational Titles ("DOT") number for the position of a claims supervisor, and averred that her testimony was consistent with the information set forth in the DOT, as well as her experience in the field.  (Tr. 59.)  Moreover, in his decision, the ALJ stated that he had determined that Plaintiff was capable of performing this job by comparing her RFC to the physical and mental

demands posed by a job as a claims supervisor.  (Tr. 30.)  In making this determination, the ALJ referred to the DOT identification number for this position, and stated that "[i]n making this finding, [he] relied on the testimony of the [VE] in accordance with SSR 00-4P."  (Tr. 30.)  As ALJ's may properly consider both information in the DOT and a VE's testimony in determining whether a claimant can still perform her past relevant work, the undersigned finds that there was substantial evidence to support the ALJ's decision.  *See* 20 C.F.R. § 404.1560(b)(2) (expressly providing that the ALJ may consult the DOT and the testimony of the VE in order to obtain evidence regarding whether a claimant possess the RFC to perform her past relevant work).  Moreover, the undersigned finds that even if the ALJ erred by failing to ask additional questions about whether her previous employment would allow her frequent breaks, this error did not prejudice Plaintiff, because the VE's expert testimony demonstrated that Plaintiff could perform this job as it is performed in the general economy.

As to Plaintiff's assertion that the VE's testimony conflicts with SSR 83-12, that contention is without merit.  SSR 83-12 provides that VE assistance should be consulted "[i]n cases of unusual limitation of ability to sit or stand."  SSR 83-12, 1983 WL 31253, at *4.  Indeed, at the administrative hearing, the VE testified that she relied on her own experience to determine that the additional restrictions in the RFC would not preclude Plaintiff from working.  (Tr. 54–62.)  Thus, the undersigned finds that the record was fully developed and the ALJ properly determined Plaintiff could perform

her past relevant work in accordance with SSR 83-12.  *See Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999) ("[A]n ALJ may rely solely on the VE's testimony.").

### E.  Plaintiff's Gastroparesis Symptoms

Plaintiff next contends that the ALJ "failed to account for claimant's gastroparesis symptoms in formulating the RFC."  (Dkt. 26 at 19.)  Specifically, Plaintiff contends that the ALJ "should have added extra breaks for going to the bathroom or staying off-task longer for the Plaintiff [to] adequately address her gastroparesis symptoms because trips to the bathroom may last longer than two to three minutes."  (*Id.* at 20.)

As noted above, the RFC is the most a claimant is able to do despite her physical and mental limitations.  20 C.F.R. § 404.1545(a)(1).  In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238–39 (11th Cir. 2004); 20 C.F.R. § 404.1520(e).

Here, the undersigned recommends that the ALJ's RFC finding is supported by substantial evidence as the ALJ properly assessed Plaintiff's objective medical findings, medical source statements, and testimonial evidence.  Indeed, the ALJ found Plaintiff's "possible gastroparesis" is a severe impairment at step two of the sequential evaluation.  In making this determination, the ALJ explained that he afforded Plaintiff "maximum deference," but noted that "given the lack of a firm diagnosis and treatment," her RFC "is sufficient to accommodate this impairment."  (Tr. 27–28.)  To

support this finding, the ALJ referenced Plaintiff's colonoscopy in 2017 which indicated no acute abnormalities, as well as Plaintiff's subsequent refusal of a gastrointestinal consultation. (Tr. 27.)  Last, the ALJ indicated that although her "impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 26.)

While Plaintiff points to evidence in the record evidencing her complaints of nausea, diarrhea, vomiting, and constipation that she contends supports a more restrictive RFC, it is not the Court's role to re-weigh the evidence where the ALJ has considered and weighed it and made findings concerning the extent to which Plaintiff is functionally limited.  *See Crawford v. Comm'r*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Wanser v. Comm'r of Social Sec.*, 8:14–cv–2512–T–DNF, 2016 WL 922719, at *4 (M.D. Fla. Mar. 11, 2016) (rejecting plaintiff's contention that the ALJ erred by failing to account for plaintiff's symptoms when formulating her RFC). Rather, the Court is limited to determining whether the ALJ failed to consider that evidence, which the ALJ did not, and whether substantial evidence supports the ALJ's finding, which it does.  *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that [plaintiff] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weighing the evidence or

substituting our judgment for that [of the Commissioner] . . . even if the evidence preponderates against' the decision") (quoting *Bloodsworth*, 703 F.2d at 1239).

### F.  Severity of Anxiety Impairment

Plaintiff next contends that the ALJ should have found Plaintiff's anxiety severe. (Dkt. 26 at 20–24.)  Specifically, Plaintiff argues that the ALJ failed to evaluate her anxiety "in a context of how it affects other mental functional capacity as well as physical issues associated with gastroparesis, which may trigger nausea and vomiting." (*Id.* at 20.)  In response, the Commissioner argues that the ALJ "properly found that Plaintiff's anxiety was a non-severe impairment and, thus, did not limit her work-related abilities." (Dkt. 31 at 8.)

At step two of the evaluation process, the ALJ must consider the medical severity of the claimant's impairments.   20 C.F.R. § 404.1520(a)(4)(ii).   When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills.  *Phillips*, 357 F.3d at 1237 (citing 20 C.F.R. § 404.1520(c)).  An impairment is not severe "only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  "Basic work activities" include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and

speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b)(1)–(6).

If an ALJ errs in finding that a claimant's additional impairments are non-severe, such error is harmless when the ALJ finds that a claimant has a severe impairment.  *Heatly v. Comm'r Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010).  This is because the ALJ has determined that step two of the analysis is met and proceeds in the disability analysis.  *Id.* ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment," which is all that is required at step two of the sequential analysis); *Tuggerson-Brown v. Comm'r Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [claimant] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Burgin v. Comm'r Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process.").

The ALJ is, however, "required to consider all impairments, regardless of severity, in conjunction with one another in performing the *latter steps* of the sequential evaluation." *Tuggerson-Brown*, 572 F. App'x at 951 (emphasis added).  The ALJ's failure to consider the combination of a claimant's impairments requires reversal. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985).  But an ALJ's statements that he considered whether claimant's impairment or combination of impairments met a Listing or that he considered all symptoms in determining claimant's RFC are sufficient "to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown*, 572 F. App'x at 951–52 (finding the ALJ's discussion of the combined effects of claimant's impairments sufficient because the ALJ discussed the non-severe impairments in the ALJ's assessment of claimant's RFC); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (quoting the ALJ and finding that it was "clear" that the ALJ considered claimant's impairments in combination because the ALJ stated that "'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity'") (emphasis in original); *Wilson*, 284 F.3d at 1224–25 (holding that the ALJ's finding, at step three, that claimant did not have an impairment or combination of impairments meeting a Listing constituted "evidence that [the ALJ] considered the combined effects of [claimant's impairments").

- 22 -

In this case, at step two of the sequential evaluation process, the ALJ found that Plaintiff had several severe impairments.  (Tr. 23.)  Thus, the ALJ found in Plaintiff's favor at step two and proceeded to the next steps of the sequential evaluation process to determine whether Plaintiff is disabled.  Because the ALJ found that Plaintiff had at least one severe impairment and thus proceeded beyond step two, any error in failing to find that Plaintiff suffers from an additional severe impairment, as Plaintiff contends, was harmless.  *See Packer v. Comm'r Soc. Sec.*, 542 F. App'x 890, 892 (11th Cir. 2013); *see also Heatly*, 382 F. App'x at 824–25 ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [plaintiff] had a severe impairment: [sic] and that finding is all that step two requires. . . .  Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").

Moreover, the record shows that the ALJ properly considered all of Plaintiff's impairments, including her mental impairments of depression and anxiety, in combination when determining whether she was disabled.  First, the ALJ specifically stated that he considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments.  (Tr. 24–25.)  After considering these "paragraph B" criteria, the ALJ found that Plaintiff's mental impairments caused a mild limitation with respect to the third functional area of concentrating, persisting, or maintaining pace.  (Tr. 24–25.)  In reaching this finding, the ALJ discussed his review of Plaintiff's medical records and

found that the records "routinely note that [Plaintiff] presents as fully alert and oriented, with intact recent and remote memory, intact judgment and insight, and no depression, anxiety or agitation with normal mood and affect, and regularly denies depression, anxiety, frequent crying, decreased memory, etc.," reflect that Plaintiff "was noted to be cooperative, interacted appropriately, had normal speech and showed no psychotic or neurotic signs," and are devoid of any mental health treatment, complaints, or complications due to depression or anxiety.  (Tr. 24–25.) The ALJ further explained that the "paragraph B" criteria are not an assessment of Plaintiff's RFC but are used to rate the severity of her mental impairments at steps two and three of the sequential evaluation process.  (Tr. 25.)  The ALJ then indicated that Plaintiff's RFC reflected the degree of limitation that he found when discussing Plaintiff's "paragraph B" mental function analysis.  (Tr. 25.)

Additionally, in explaining his assessment of Plaintiff's RFC, the ALJ indicated that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  (Tr. 26.)  The ALJ further provided that after reviewing the evidence, he found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 26.)

- 24 -

In sum, the undersigned finds that the ALJ sufficiently considered Plaintiff's mental impairments in combination with her other impairments, and that substantial evidence supports the ALJ's RFC finding and determination that Plaintiff's anxiety was not severe. *See Ward v. Astrue*, No. 11–cv–481–PJC, 2012 WL 5830539, at *8 (N.D. Okla. Nov. 16, 2012) (citation omitted) (finding that the "Paragraph B Criteria does not require any specific one-for-one correlation to a function on the Mental Residual Functional Capacity Assessment" even where a moderate limitation in concentration, persistence, or pace is found); *Maye v. Berryhill*, No. 6:18–cv–679–Orl–DNF, 2019 WL 2755030, at *5–6 (M.D. Fla. July 2, 2019) (rejecting plaintiff's claim that the ALJ erred by finding mild limitations in four areas of mental functioning but failing to include any mental limitations in the RFC).

### G. Past Relevant Work as Actually and Generally Performed

Plaintiff next contends that the ALJ erred "in holding that the Plaintiff can perform the Claims Supervisor job as generally and actually performed." (Dkt. 26 at 24–27.) Specifically, Plaintiff asserts that she cannot perform her work as actually performed because of her "poor vision and physical problems in her lower extremities." (*Id.* at 25.) Regarding as generally performed, Plaintiff asserts that she cannot perform her past job because of her "progressively worsening" vision. (*Id.* at 26.)

At step four of the sequential evaluation process, Plaintiff bears the burden of showing that she can no longer perform her past relevant work as she actually

performed it, or as it is performed in the general economy. *Waldrop*, 379 F. App'x at 953 (citing *Jackson*, 801 F.2d at 1293–94). "[I]t it is the claimant's burden to demonstrate not only that she can no longer perform her past relevant work as she actually performed it, but also that she can no longer perform this work as it is performed in the general economy." *Id.* Additionally, for an ALJ to determine that a claimant can perform her past relevant work, the ALJ must consider the claimant's RFC and whether that allows her to perform that work "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(a)-(b).

Here, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work as actually performed and as generally performed in the national economy. The record reflects that after making Plaintiff's RFC finding, he consulted the VE, posed hypotheticals that included all of Plaintiff's limitations, and utilized this expert testimony, along with other evidence in the record, to determine the relationship between Plaintiff's RFC and her past relevant work. *See Phillips*, 357 F.3d at 1238; *see also* 20 C.F.R. § 404.1560(b)(2). Therefore, the ALJ did not err in finding that Plaintiff could perform her past relevant work as actually performed or as generally performed in the national economy, and his finding is supported by substantial evidence. *See Hennes v. Comm'r of Social Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2005) (holding that the ALJ properly utilized the VE's

testimony after proposing hypothetical questions compromising all of the plaintiff's limitations to determine that she could perform her past relevant work).

To the extent Plaintiff contends that her RFC should have included more restrictive limitations, her contention is without merit.  The ALJ properly considered the medical evidence regarding Plaintiff's visual and lower-leg impairments in formulating the RFC.  Indeed, substantial evidence supports the ALJ's finding that Plaintiff "appears well-able to perform work with no visual restrictions, aside from avoiding direct sunlight."  (Tr. 26–27.)  As the ALJ noted, despite her diagnosis of non-proliferative diabetic retinopathy, the medical records demonstrated that her condition continued to be noted as either stable or mild with no worsening symptoms, pain or floaters.  (Tr. 323–28, 468, 473, 481, 487, 505, 525–33.)  The ALJ further discussed the various eye examination findings and assessed Plaintiff's primary care provider's notes that Plaintiff regularly denied eye pain, vision loss, blurring, irritation, discharge, and photophobia.  (Tr. 331, 334, 336, 339, 342, 345, 348, 351, 354, 357, 360, 401, 416, 419, 422, 424, 426, 428, 430, 433, 436, 541, 590, 624.)

Likewise, substantial evidence supports the ALJ's finding that "while the claimant alleges swelling, numbness, tingling and intense pain in her feet and ankles . . . and testified that she must elevate her feet regularly, review of the record does not support these assertions."  (Tr. 27.)  As the ALJ noted, there is no evidence in the record that Plaintiff regularly has edema or swelling to her extremities, nor any medical recommendations that she elevate her feet.  Rather, the record reflects that

despite noted edema and deformity of the right foot as a result of a fracture, Plaintiff continuously demonstrated a normal gait and ambulation.  (Tr. 332, 337, 340, 358, 417, 420, 423, 425, 427, 429, 431, 434, 437, 467, 472, 488, 492, 502, 506, 538, 542, 625.)  And further, despite the lack of medical evidence, the ALJ did include sedentary work limitations in Plaintiff's RFC.   Thus, the undersigned recommends that substantial evidence supports the ALJ's finding and this Court may not substitute its judgment for that of the Commissioner.  *Bloodsworth*, 703 F.2d at 1239; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence.").

### H. Additional Evidence

Plaintiff next contends that the ALJ erred by refusing to admit medical records from Diagnostic Clinic Largo.  (Dkt. 26 at 27–28.)  Specifically, Plaintiff contends that she alerted the SSA in a five-day letter that there were outstanding records from Diagnostic Clinic Largo and that the ALJ "erred as a matter of law by refusing to admit" these records since the five-day rule "provides only that the claimant either inform or submit records 5 business days before the hearing."  (*Id.* at 26.)  In response, the Commissioner contends that although Plaintiff's counsel's five-day letter did properly indicate that there were outstanding records from Diagnostic Clinic Largo, Plaintiff fails to demonstrate prejudice from the ALJ's decision to not admit the records.  (Dkt. 31 at 7–8.)

- 28 -

Pursuant to 20 C.F.R. § 404.935(a), a claimant must inform the SSA about or submit written evidence five business days prior to a scheduled hearing.  Here, at the May 23, 2019 administrative hearing, Plaintiff's counsel submitted seventeen pages of evidence from the Diagnostic Clinic Largo.  (Tr. 20.)  However, as the Regulations permitted, on May 16, 2019, Plaintiff's counsel submitted a five-day letter, advising the SSA that there was pending medical evidence from Aspen Dental Clearwater, Dr. Kendar Shyte, and Diagnostic Clinic Largo.  (Tr. 276–79.)  The Commissioner does not dispute that this letter was timely, nor contest its contents.  (Dkt. 31 at 7–8.)  Notwithstanding, and for unknown reasons, the ALJ found that Plaintiff's letter failed to indicate that there was outstanding evidence from Diagnostic Clinic Largo.  (Tr. 20, 40.)  As a result, he refused to accept the seventeen pages of evidence turned over at the hearing.  (Tr. 20, 40–41.)

However, for a case to be remanded to the Commissioner, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated."  *Graham*, 129 F.3d at 1423.  Plaintiff fails to make such a showing.  In her memorandum, Plaintiff does not explain what relevant information these records contain or how they would have changed the ALJ's decision.  Thus, the undersigned finds that Plaintiff has failed to demonstrate prejudice to warrant that this matter be remanded.  *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . .  [T]he party seeking reversal normally must explain why the

- 29 -

erroneous ruling caused harm."); *Loveless v. Comm'r, Social Sec. Admin.*, 678 F. App'x 866, 868 (11th Cir. 2017) (noting that "an error is harmless if it does not affect the ALJ's ultimate decision"); *Glenn v. Kijakazi*, No. 2:19–cv–16806, 2021 WL 4438390, at *13 (D. N.J. Sept. 28, 2021) (holding that "even if the ALJ erred in excluding this evidence, Plaintiff has not explained why the approximately 1000 pages from Saint Barnabas Medical Center requires remand.  Based on this record, the Court concludes that any error in excluding this evidence is, at most, harmless."); *Stewart v. Comm'r of Social Sec.*, No. 5:20–cv–181–MAP, 2021 WL 3855944, at *6 (M.D. Fla. Aug. 30, 2021) (finding that plaintiff was not prejudiced where he failed to explain how the missing records would have changed the ALJ's decision); *Hollingsworth v. Comm'r of Social Sec.*, No. 2:18–cv–573–FtM–32–MRM, 2020 WL 1027447, at *4 (M.D. Fla. Jan. 30, 2020) (finding that because plaintiff failed to demonstrate prejudice, the ALJ's decision did not violate her due process rights); *Dax v. Colvin*, No. 1:15–cv–21–JHR, 2015 WL 9473405, at *2 (D. Me. Dec. 28, 2015) (claimant who argued that ALJ committed reversible error in failing to admit evidence pursuant to five-day rule did not make "the showing of prejudice necessary to warrant reversal and remand" when he did "not even address the question of how the contents of the report would require, or even support, a different outcome on the merits of his claim") (citation, internal quotation marks, and footnote omitted); *see also Fowler v. Kijakazi*, 2021 WL 5823704, at *2 (9th Cir. Dec. 8, 2021) (noting that even if the ALJ erred in declining to consider medical evidence, any error was harmless since claimant failed to demonstrate that the

records "would have altered the ALJ's analysis"); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."); *Harris v. Saul*, No. 3:19-cv-00540, 2020 WL 4530930, at *6 (M.D. Tenn. Aug. 6, 2020), *adopted by* 2020 WL 6707975, at *4 (M.D. Tenn. Nov. 16, 2020) (citations omitted) (concluding that "[a]lthough the ALJ erred in failing to admit the evidence submitted in compliance with the five-day rule, that error was ultimately harmless and thus [did] not warrant a reversal or remand" where the claimant had "not demonstrated that he was prejudiced on the merits or deprived of any substantial rights because of the ALJ's procedural error," the "ALJ's ultimate decision was supported by substantial evidence," and "the Appeals Council considered the omitted evidence and found that it would not have changed the ALJ's decision").

## I.  Grid Rules of Medical-Vocational Guidelines

Plaintiff's final contention is that the ALJ deliberatively formulated her RFC in a manner that would circumvent the Grid Rules of Medical-Vocational Guidelines. (Dkt. 26 at 28–29.)  Specifically, Plaintiff contends that given Plaintiff's "high school education," "advanced age," lack of transitional skills, "vision problem," "need to alternate between sitting and standing," and "need to take extra breaks to address her physical problems," the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly referred to as "the Grids"), direct a finding of disabled.

(Dkt. 26 at 28.)  This argument is without merit, however, because as discussed above, the ALJ properly assessed Plaintiff's RFC using all of the relevant medical and other evidence in the record.   Further, the ALJ included limitations in the RFC to accommodate her impairments and complications which were consistent with the medical record and objective evidence.  Thus, despite her disagreement with the RFC, the Court is limited to determining whether the ALJ failed to consider that evidence, which the ALJ did not, and whether substantial evidence supports the ALJ's finding, which it does.  *See Moore*, 405 F.3d at 1213.

Moreover, the Grids apply only when the ALJ finds the claimant is unable to perform past relevant work in step four and reaches step five.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding claimant's argument that the ALJ should have applied the Grids fails because the Grids are applied only if the claimant is unable to perform his or her vocationally relevant past work); *see also Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991) (the Grids are not applicable in step four cases); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (ALJ correctly did not apply medical-vocational guidelines to claimant whom she found was capable of performing past relevant work); 20 C.F.R. 404, subpt. P, app. 2, § 200.00(a) (the introductory section of the Grids specifies that the Grids apply where "the individual's impairment(s) prevents the performance of his or her vocationally relevant past work").  Here, the ALJ found Plaintiff capable of performing past relevant work in step four and did not proceed to step five.  (Tr. 30.)  As such, the undersigned recommends that the ALJ

correctly did not consult the Grids and that his decision is supported by substantial evidence.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1. The decision of the Commissioner be **AFFIRMED**.

2. The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on January 14, 2022.


JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.


Copies furnished to:
The Honorable William F. Jung
Counsel of Record